**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | |
|---|---|
| **JERRY BRANHAM,** | Case No.: |
| **Plaintiff,** | |
| **v.** | **COMPLAINT FOR DAMAGES** |
| **BRISTOL-MYERS SQUIBB COMPANY;** | |
| **ASTRAZENECA PHARMACEUTICALS, LP** | **JURY TRIAL DEMANDED** |
| **Defendants** | |

Plaintiff, Jerry Branham, by counsel, alleges against Defendants, Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals, LP as follows:

## I.    INTRODUCTION

1.    This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.    Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.    The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Plaintiff ingested Saxagliptin, and as a result of use of the drug suffered severe and permanent injuries.

## II.    **GENERAL ALLEGATIONS**

5.      Plaintiff, Jerry Branham ("Plaintiff"), by counsel, brings this action for personal injuries suffered as a result of being prescribed and ingesting the defective and unreasonably dangerous prescription drug(s) Onglyza and/or Kombiglyze XR.

6.      Onglyza and Kombiglyze XR are prescribed to help lower blood sugar levels in person with type 2 diabetes mellitus, and at all times relevant hereto, were manufactured, designed, tested, packaged, labeled, marketed, advertised, promoted, distributed, and sold by Defendants, Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals, LP (collectively, the "Defendants").

## III.    **PARTIES**

7.      Plaintiff, Jerry Branham, is and, at all relevant times, was a citizen an resident of Pikeville, Pike County, Kentucky.

8.       Plaintiff ingested Saxagliptin from approximately January 30, 2018 to approximately July 19, 2018 resulting in severe and permanent injuries.

9.      Defendant, Bristol-Myer Squibb Company ("BMS"), is a Delaware corporation with its principal place of business at 345 Park Avenue, New York, New York 10154.  At all relevant times, BMS has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Saxagliptin within the Commonwealth of Kentucky.

10.     Defendant, AstraZeneca Pharmaceuticals, LP ("AZ"), is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, Delaware 19850.  At all relevant times, AZ has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of Saxagliptin within the Commonwealth of Kentucky.

11.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

12.     At all relevant times, Defendants acted in concert with one another to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure, and other adverse effects associated with Saxagliptin from the public, Plaintiff, physicians, and other healthcare providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiff.  But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiff would not have ingested Saxagliptin.

13.     At all times alleged herein, Defendants were engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling Saxagliptin.

14.     At all times alleged herein, Defendants were authorized to conduct or engage in business within the Commonwealth of Kentucky and supplied Saxagliptin within the

Commonwealth of Kentucky. Defendants received financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling, and distributing Saxagliptin within the Commonwealth of Kentucky.

15.     The combined acts and/or omissions of each Defendant resulted in indivisible injuries to Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized, or ratified the conduct of each and every other Defendant.

16.     The amount in controversy exceeds the jurisdictional limits of this court.

## IV.    **JURISDICTION AND VENUE**

17.     Jurisdiction is proper in this Court pursuant to 28 USC § 1332 as complete diversity of citizenship exists between Plaintiff and Defendants and the matter in controversy exceeds the sum of $75,000.000, exclusive of interest and costs.

18.     In addition, the Venue of this case is proper in the Commonwealth of Kentucky pursuant to 28 USC § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Commonwealth of Kentucky. In addition, Defendants have committed a tort in whole or in part in the Commonwealth of Kentucky and have regular and continuing contacts with the Commonwealth of Kentucky.

## V.     **FACTUAL ALLEGATIONS**

19.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2 diabetics have an increased risk of cardiovascular disease, which is the leading cause of

morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell to type 2 diabetics to allegedly lower adverse complications associated with the disease.

20.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, knows as incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

21.    DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally, occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adopted as a sufficient and safe period of time.  At no time during the development of their drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

22.    In 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this to companies developing anti-

diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes*, stated applicants of new anti-diabetic medications for the treatment of this disease should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.  Despite this development and guidance, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold their drug for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

23.    In 2009, Defendants began marketing Onglyza and then Kombiglyze XR in 2010. Defendants marketed both drugs as treatment for type 2 diabetes and agents to help reduce adverse complications associated with the disease.  At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

24.    After Defendants began selling and making substantial profits off their drugs, Defendants finally conducted what the FDA recommended back in 2008, which was a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

25.    The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus—Thrombolysis in Myocardial Infarction

53" (SAVOR-TIMI 53 or "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

26.    After receiving and reviewing the SAVOR findings, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  One member voted against adding the warning and instead voted to withdraw the drug from the US market.[1]  Despite SAVOR findings and the FDA Advisory Committee vote, Defendants failed and continue to fail to warn.

27.    In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure, and death, Defendants' Saxagliptin drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

28.    Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

29.    Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues.

---

[1] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://diabetescontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-andnesina-dpp-4s-

30.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

31.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

## VI.    PLAINTIFF'S USE OF SAXAGLIPTIN

32.     Plaintiff was prescribed and ingested Saxagliptin at various times. Specifically, Plaintiff Jerry Branham was prescribed and ingested Saxagliptin beginning approximately January 30, 2018 through approximately July 2018 as part of his treatment for type 2 diabetes.

33.     Plaintiff used Saxagliptin manufactured, packaged, marketed, sold, and/or distributed by Defendants. The Saxagliptin reached Plaintiff without substantial change in the drug's condition.

34.     Upon information and belief, while using Saxagliptin, and as a direct and proximate result thereof, Plaintiff developed serious and/or permanent adverse effects including, but not limited to, heart failure, congestive heart failure, resulting in a massive heart attack in which Plaintiff received a quadruple bypass..

35.     As a result of said injuries, Plaintiff suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

36.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell, and profit from sales of Saxagliptin.

37.     Despite such knowledge, Defendants knowingly, purposely, and deliberately failed to adequately warn Plaintiff, patients, consumers, medical providers, and the public of the increased risk of serious injury associated with using Saxagliptin including, but not limited to, heart failure, congestive heart failure, cardiac failure, and death related to those events.

38.     Upon information and belief, Plaintiff's prescribing physicians would not have prescribed Saxagliptin to Plaintiff, would have changed the way in which they treated Plaintiff's relevant conditions, changed the way they warned Plaintiff about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiff the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

39.     Upon information and belief, Plaintiff's prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiff.

40.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries, including, but not limited to, heart failure, congestive heart failure, and cardiovascular

injury, resulting in a massive heart attack requiring plaintiff undergo a quadruple bypass surgery, which resulted in damages to Plaintiff in a sum in excess of the jurisdictional limits of the Court.

41.    As a direct and proximate result of Defendants' conduct, Plaintiff incurred obligations and expenses for medical care, testing and treatment. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, wages, profits and commissions, diminishment of earning potential, and other pecuniary losses.

42.    Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## VII.    DELAYED DISCOVERY

43.    Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Plaintiff and Plaintiff's physicians and healthcare providers the true and significant risks associated with Saxagliptin.

44.    As a result of Defendants' actions, Plaintiff and Plaintiff's physicians and healthcare providers were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

45.    No limitations period ought to accrue until such time as Plaintiff knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiff hereby invokes the discovery rule based on the fact

that this Complaint is filed well within the statutory period after Plaintiff knew or should have known the facts alleged herein.

46.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

47.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

### CAUSES OF ACTION

### COUNT I
### DESIGN DEFECT

48.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

49.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

50.      At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

51. Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiff, without any alterations or changes in their defective and unreasonably dangerous condition.

52. Saxagliptin was used by Plaintiff in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

53. Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce.

54.    Saxagliptin, as manufactured and supplied by the Defendants, was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

55.    A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiff and Plaintiff's physicians.

56.    Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture, and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendants thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

57.    Plaintiff and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

58.    Plaintiff was not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

59.    Had adequate information regarding the safety of the products been provided to Plaintiff, Plaintiff would not have used Saxagliptin.

60.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

61. As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations, and otherwise culpable acts, Plaintiff suffered the injuries and damages alleged herein.

62. Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

## COUNT II
## NEGLIGENCE

63.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

64. Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

65.     At all relevant and material times, Defendants had a duty to Plaintiff to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiff to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.     Defendants breached their duty of care to Plaintiff and were negligent in their actions, misrepresentations, and omissions.

67.    Defendants advertised, marketed, sold, and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiff and Plaintiff's healthcare providers would not have been aware.

68.    Defendants, individually and collectively, had a duty to warn the FDA, their customers, including Plaintiff, the medical community and the public about the increased risk of injury but failed to do so.

69.    Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

70.    Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including, but not limited to, heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell, and distribute Saxagliptin to consumers, including Plaintiff.

71.    Defendants negligently and recklessly represented to Plaintiff, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

72.    Defendants negligently and recklessly failed to disclose to Plaintiff and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

73.    Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

74.    Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent, and reckless representations and omissions with the intent or purpose that Plaintiff and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

75.    Defendants omitted, suppressed, and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

76.    At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiff, as well as the medical community, the FDA and the consuming public.

77.    Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiff, rely upon them.

78.    Plaintiff and Plaintiff's healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

79.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiff sustained severe and permanent injuries and damages.

80.     Had Plaintiff been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiff would not have used these products.

81.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

**COUNT III**
**FAILURE TO WARN**

82.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further alleges:

83.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

84.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiff.

85.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

86.     The Saxagliptin manufactured by Defendants reached Plaintiff without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

87.     The Plaintiff was administered the Saxagliptin for its intended purpose.

88.     Plaintiff used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

89.     Defendants failed to warn and/or adequately warn Plaintiff, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

90.     Plaintiff did not have the same knowledge as Defendants and no adequate warning was communicated to them.

91.     The Plaintiff could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

92.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warning and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

93.     Plaintiff did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiff or to Plaintiff's treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

94.     Defendants had a continuing duty to provide consumers, including Plaintiff, and

Plaintiff's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

95.    Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiff.

96.    Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

97.    Defendants knew or should have known that consumers, including Plaintiff, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

98.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiff and to Plaintiff's intermediary physicians.

99.    Defendants and each of them had a duty to warn the FDA, the medical community,
Plaintiff, and Plaintiff's physicians about the increased risks of injury but failed to do so.

100.    Defendants had a duty and obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the

adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

101.    By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

102.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiff and the public.

103.    As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiff sustained injuries and damages.

104.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

**<u>COUNT IV</u>**
**BREACH OF EXPRESS WARRANTY**

105.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

106.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing,

advertising, promoting, supplying, and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiff and other members of the general public.

107.    Saxagliptin did not conform to Defendants' express representations and warranties.

108. At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

109. At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

110.    In deciding to purchase and use Saxagliptin, Plaintiff, other consumers, and the medical community relied upon Defendants' express warranties.

111.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiff sustained severe and permanent injuries and damages.

112.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

## <u>COUNT V</u>
## <u>BREACH OF IMPLIED WARRANTY</u>

113.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

114     At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

115.    Defendants impliedly warranted to Plaintiff that Saxagliptin was safe for use by Plaintiff's and the consuming population.

116.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

117.    Plaintiff and Plaintiff's healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

118.    Plaintiff was a foreseeable user of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiff without substantial change in the condition in which the products were manufactured and sold by Defendants.

119.    Plaintiff and Plaintiff's healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

120.    The Saxagliptin used by Plaintiff was not safe, of merchantable quality, nor fit for use.

121.    The Saxagliptin used by Plaintiff did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

122.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

123.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations, and otherwise culpable acts described herein,

Plaintiff sustained severe and permanent injuries and damages.

124.    Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

### <u>COUNT VI</u>
### VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

125.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

126.    Defendants are liable to Plaintiff pursuant to the Kentucky Consumer Protection Act, KRS 367.170, *et seq.* (hereinafter, "KCPA"). Defendants are in the business of manufacturing, distributing, selling, and marketing Saxagliptin. Defendants and/or their agents designed, formulated, manufactured, assembled, prepared for sale, distributed, and/or sold the drugs to Plaintiff in a defective condition unreasonably dangerous when used as intended in the usual and customary manner.

127.    At all times mentioned, Defendants' conduct was in violation of the KCPA in that Defendants' conduct constitutes business practices, which are unfair, false, misleading, and deceptive.

128.    Privity existed between Plaintiff and Defendants.

129.    Plaintiff, Jerry Branham, while consuming Saxagliptin in the usual and customary manner as intended, suffered injury as a proximate result of Defendants placing the products on the market, Defendants' use of false and/or misleading misrepresentations and/or omissions of material fact in connection with the marketing, promotion, and sale of Saxagliptin. Defendants communicated the purported benefits of Saxagliptin while failing to disclose the serious and dangerous injuries related to the use of the products, with the intent that the consumers, such as

Plaintiff, would rely upon the misrepresentations and purchase and use Saxagliptin believing it to be safe and beneficial for use in the prescribed, usual and customary manner.

130.    The Saxagliptin was unreasonably dangerous and defective at the time Defendants placed it on the market, and at the time of Plaintiff's consumption and injuries, was in substantially the same condition as it was at the time the Saxagliptin were marketed by Defendants.

131.    Defendants' violation of the KCPA is a substantial factor in causing the Plaintiff to endure great mental pain and anguish, humiliation, mortification, and has further caused the Plaintiff to incur substantial pecuniary loss. Plaintiff has further been caused to incur attorneys' fees as a result of the Defendants' conduct.

132.    Defendants acted towards the Plaintiff with reckless disregard of the Plaintiff's rights, thereby entitling the Plaintiff to punitive damages.

133.    As a direct and proximate result of the Defendant's violations of the KCPA, Plaintiff has suffered significant and permanent damages, including but not limited to physical injury, past and future medical expenses, past and future physical and mental pain and suffering, and will continue to suffer all such damages in the future. Additionally, Plaintiffs are entitled to recover attorney's fees and punitive damages. Plaintiffs demand a jury trial on all issues contained herein.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, Jerry Branham, demands:

1.    Trial by jury;

2.      Judgement against Defendants, Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals, LP, for compensatory damages in an amount in excess of the amount necessary to invoke the jurisdiction of this Court and reasonably calculated to compensate the Plaintiff for his damages;

3.      Punitive damages against the Defendants, Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals, LP;

4.      Attorneys' fees;

5.       Costs of this action;

6.      Pre-judgment and all other interest recoverable; and

7.      Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

Respectfully submitted,

_____ /s/ *Glenn Martin Hammond* _____
**GLENN MARTIN HAMMOND**
GLENN MARTIN HAMMOND LAW OFFICE
685 HAMBLEY BLVD., SUITE 3
P.O. BOX 1109
PIKEVILLE, KENTUCKY 41502
PH: (606) 437-7777
FAX: (606) 437-1004
*Attorney for Plaintiff*